UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BANK OF AMERICA, N.A.,
    Plaintiff,

v.

JONATHAN MALKIN, PHILIPPA MALKIN, and
COUNTRY BANK,
    Defendants.

No. 3:16-CV-694 (MPS)

## MEMORANDUM AND ORDER

Plaintiff Bank of America, N.A. ("BOA") brought this action against Defendants Jonathan Malkin and Philippa Malkin ("the Malkins") and Country Bank ("Country"), seeking to foreclose a mortgage given by the Malkins to secure a Note given by them and to recover damages arising from the alleged default on the Note. *See* Second Amended Complaint (ECF No. 35.)

The Malkins failed to appear or respond to the Second Amended Complaint, and on October 11, 2016, the Court granted BOA's motion for entry of default, entered default with respect to the Malkins under Federal Rule of Civil Procedure 55(a), and directed BOA to file a motion for default judgment under Federal Rule of Civil Procedure 55(b). (ECF No. 37.) On April 18, 2017, BOA moved for judgment of strict foreclosure. (ECF No. 42.) Country responded to BOA's motion, indicating that while it did not object to the entry of judgment of foreclosure, Country requested that the Court enter judgment of foreclosure by sale, rather than strict foreclosure. (ECF Nos. 46, 47.)

For the reasons discussed below, the motion for judgment of strict foreclosure is DENIED and Country's motion for judgment of foreclosure by sale is GRANTED.

### I. Factual Background

The following facts are taken from the Second Amended Complaint and the exhibits. (ECF No. 35.) On June 19, 1997, Mr. Malkin became indebted to NationsBank, N.A. ("NationsBank") in the amount of $1,190,000.00, with interest thereon ("the $1.19 MM Loan"), evidenced by a note executed by Mr. Malkin ("the $1.19 MM Note"). (*Id.* ¶¶ 9-10.) As security for the $1.19 MM Loan and Note, Mr. Malkin granted to NationsBank a mortgage ("the Mortgage") encumbering his interest in the premises located at 177 Roxbury Road, Washington Depot, Connecticut ("the Property"). (*Id.* ¶¶ 8, 12; ECF No. 35-1.) The Mortgage was recorded on June 13, 1997, in the Washington, Connecticut Land Records. (ECF No. 35 ¶ 13.) NationsBank later merged with BOA and assigned the Mortgage to BOA. (*Id.* ¶ 15.)

On September 13, 1999, Mr. Malkin entered into a Modification and Extension Agreement with NationsBank agreeing to modify certain terms of the $1.19 MM Note and the Mortgage, which was recorded in the Land Records. (*Id.* ¶¶ 16-17; ECF No. 35-2.) The Malkins entered into a second Modification and Extension Agreement with BOA on January 23, 2002, again agreeing to modify certain terms under the $1.19 MM Note and Mortgage. (ECF No. 35 ¶ 18.) The second modification agreement was recorded in the Land Records. (*Id.* ¶ 19; ECF No. 35-3.) Under the second modification agreement, the principal amount of the Malkins' debt to BOA was increased to $1,500,000.00 ("the $1.5 MM Loan"). (ECF No. 35 ¶ 21.) The Malkins executed a note evidencing the $1.5 MM Loan ("the $1.5 MM Note"). (*Id.* ¶ 22; ECF No. 35-4.) The $1.5 MM Note provided that all of the terms, covenants, and conditions contained in the Mortgage were made to protect BOA from a potential default. (ECF No. 35 ¶ 24.)

Between October 1, 2002 and March 1, 2009 the Malkins entered into four modification agreements with BOA, agreeing to modify certain terms under the $1.5 MM Note and the Mortgage. (ECF No. 35 ¶¶ 28-37; ECF Nos. 35-5 to 35-8.) The fourth modification agreement was

recorded on April 21, 2009 in the Land Records. (ECF No. 35 ¶ 37.) Under the fourth modification agreement, the interest rate was modified to an annual rate of 4.45% and the maturity date was extended to March 1, 2014. (*Id.* ¶ 36.) The interest rate could change on March 1, 2012 and every twelfth month thereafter, but could never be greater than 10.45% or less than 2.75%. (*Id.*)

The Malkins failed to pay the then-outstanding balance of the principal and all accrued and unpaid interest, and all other charges on the maturity date, as required by the $1.5 MM Note. (ECF No. 35 ¶¶ 38-39.) Under Section 6 of the 1.5 MM Note, the Malkins' failure to pay these amounts constitutes a default. (*Id.* ¶ 39.)

BOA sent the Malkins a letter notifying them that they had defaulted on the $1.5 MM Loan on January 23, 2015. (*Id.* ¶ 40; ECF No. 35-9.) BOA informed the Malkins that they could cure the default by paying $1,476,758.52 by February 23, 2015. (ECF No. 35 ¶ 41.) BOA also informed the Malkins that if they did not cure the default by paying the amount due in full by that date, then BOA would continue to pursue its rights and remedies, including a foreclosure action and sale of the Property. (*Id.*) The Malkins remained in default and the past due amount, additional interest, and costs remained unpaid. (*Id.* ¶ 42.)

BOA elected to declare the entire unpaid balance of the principal sum immediately due and payable. As of March 9, 2016, the Malkins owed the principal sum of $1,438,637.00 plus $85,465.68 in interest accruing at the default rate, plus fees, late charges, and attorneys' fees and expenses. (*Id.* ¶ 43.)

**II.    Legal Standard**

In light of the Malkins' default, the Court must "accept[] as true all of the factual allegations of the complaint, except those relating to damages." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The Court must draw all reasonable inferences in the plaintiff's favor. *Finkel*

*v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The plaintiff seeking default judgment has the burden to establish damages with reasonable certainty. *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013).

**III.     Discussion**

    **A.  Foreclosure**

Accepting as true all of the factual allegations above, the Court finds that the Malkins defaulted on the $1.5MM Note by failing to make required payments, and the Plaintiff is entitled to judgment of foreclosure.

BOA moved for entry of a judgment of strict foreclosure (ECF No. 42), and Country moved for foreclosure by sale. (ECF No. 47.) In Connecticut, the choice between foreclosure by sale and strict foreclosure is left to the discretion of the court. *See* Conn. Gen. Stat. § 49-24;[1] *Hartford Fed. Sav. & Loan Assn. v. Tucker*, 196 Conn. 172, 184 (1985), *cert. denied*, 474 U.S. 920, 106 S.Ct. 250 (1985); *Emigrant Mortg. Co., Inc. v. Crismara*, No. 3:05-CV-1772 (JCH), 2008 WL 2551039, at *15 (D. Conn. June 23, 2008) (ordering foreclosure by sale). "In a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner." *Fidelity Trust Co. v. Irick*, 206 Conn. 484, 490 (1988). As "a mortgagee is only entitled to the payment of the debt owing him, including such incidental charges as he may add to it," where "substantial equity in the property exists in excess of the first mortgagee's loan," a trial court should consider exercising its discretion in favor of foreclosure by sale. *Id*. at 489-91 (internal citations omitted).

---

[1] Section 49-24 provides, "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed . . . by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending . . . ."

4

BOA's Appraisal, which included an inspection of the interior and exterior of the property and a comparison to eight comparable sales, concluded that the fair market value of the property is $1,625,000.00. (ECF No. 42-2 at 4.) Country's Appraisal, which appears to have included an inspection of the exterior of the property only and a comparison to six comparable sales, concludes that the market value of the property is $2,125,000.00. (ECF No. 47-1 at 4.) Under these circumstances, the court orders foreclosure by sale.

The parties shall confer and file a proposed order within 30 days of this order providing the following:

(1) a proposed date for the sale of the Property;

(2) a proposed committee for the foreclosure; and

(3) a proposed schedule for the committee's activities prior to the sale.

The sale shall be subject to the approval and the ratification of this Court and a motion for the approval of the sale shall be filed within 14 days following the sale.

### B. Damages

BOA's alleged damages fall into two categories: the debt evidenced by the Note, including the principal balance and interest, and costs and fees, including BOA's reasonable attorneys' fees and the appraisal fee recoverable under the Note.

#### 1. Debt

BOA submitted an Affidavit of Debt itemizing its claimed debt under the Note. (ECF No. 42-1.) The Court finds that BOA has proven the following damages under the relevant loan documents with reasonable certainty.

BOA states that the principal balance due is $1,438,637.00 (ECF No. 42-1 at 9.) The Fourth $1.5MM Loan Modification provides that the interest rate on the $1.5MM Loan is a yearly rate of

5

4.45% assessed both before and after default, but that the interest rate could change on March 1, 2012 and every twelfth month thereafter, and that the interest rate would never be greater than 10.45% or less than 2.75%. (ECF No. 35-8 at 2-3.)

BOA states that the interest due for the period between March 1, 2014 and March 20, 2017 is $134,714.36. (ECF No. 42-1 at 9 ¶ 32.) According to the affidavit of debt, "interest continues to accrue at a per diem rate of $140.71052 after March 20, 2017."[2] (*Id.* at 10 ¶ 33.) BOA further states that the interest due for the period between March 21, 2017 and April 18, 2017, accruing at $140.71052 per diem, is $4,080.61. (*Id.* at 2.) Interest due for the period between April 19, 2017 and the date of today's ruling, accruing at $140.71052 per diem, is therefore $40,243.21.

The Court finds that the total amount of debt owed as of today's ruling is $1,617,675.18.

### 2. Costs and Fees

BOA is also entitled to its costs and fees under the terms of the $1.5 MM Note. (*See* ECF No. 35-4 at 3 ("If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.").)

BOA states that it is entitled to $2,510.00 for its appraisal fee, but it provides no explanation for this figure. (ECF No. 42-1 at 9 ¶ 32.) BOA's appraiser has submitted an affidavit requesting a fee of $1,875.00 for services rendered. (ECF No. 42-2 at 2.) Therefore, BOA has proven with reasonable certainty that it is entitled to $1,875.00 for appraisal.

---

[2] The Note provided that the interest rate could change on March 1, 2012 and every twelfth month thereafter. (ECF No. 35-8 at 3.)

The Court now turns to the reasonableness of BOA's attorney fees request. It is well settled that "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 64, 66 (D. Conn. 2000) (internal quotation marks omitted). Under Connecticut law, "[a]ny agreement contained in a . . . note . . . or in any mortgage, to pay costs, expenses or attorneys' fees . . . in any proceeding for collection of the debt, or in any foreclosure of the mortgage . . . is valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amounts to be allowed for those expenses and attorneys' fees, even though the agreement may specify a larger sum." Conn. Gen. Stat. § 49-7; *see also Rand-Whitney Containerboard v. Town of Montville*, Civ. No. 3:96CV413 (HBF), 2006 WL 2839236, at *4 (D. Conn. Sept. 5, 2006) ("where there is a contractual provision for attorney's fees, the term 'reasonable' is implied by law") (citing *Crest Plumbing and Heating, Co. v. DiLoreto*, 12 Conn. App. 468, 480 (1987)) (internal citations omitted).

Connecticut courts have long required "that the reasonableness of attorney's fees and costs . . . be proven by an appropriate evidentiary showing." *Smith v. Snyder*, 267 Conn. 456, 471 (2004) (internal quotation marks omitted). Thus, "[u]nder Connecticut law, 'the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate . . . . The courts may then adjust this lodestar calculation by other factors.'" *Cumulus Broadcasting v. Okesson*, Civ. No. 3:10CV315 (JCH), 2012 WL 3822019, at *4 (D. Conn. Sept. 4, 2012) (quoting *Land Group, Inc. v. Palmieri*, 123 Conn. App. 84, 98 (2010)). "This is consistent with caselaw from the circuit and Supreme Court, which 'have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee.'"

*Cumulus Broadcasting*, 2012 WL 3822019, at *4 (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks and citations omitted).

In considering the reasonableness of the hourly rates, the Court considers the prevailing hourly rates in the forum district as presumptively reasonable, but need not adhere to them. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191-93 (2d Cir. 2008); *Bank of N.Y. Mellon v. Bell*, No. 3:11-CV-1255 JAM, 2015 WL 778668, at *2 (D. Conn. Feb. 24, 2015) (assessing reasonableness of attorney's fees under the provisions of a mortgage in foreclosure action). The Court "should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Arbor Hill*, 522 F.3d at 193.

Plaintiff is represented by two law firms: Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") and Locke Lord LLP ("Locke Lord"). Sheppard Mullin billed the Plaintiff between $227.50 and $610.00 per hour for associates,[3] with the majority of hours billed at the rate of $367.50 per hour, and billed $255.00 per hour for a legal assistant. Locke Lord billed the Plaintiff between $452 and $455 per hour for partners, between $210 and $301 per hour for associates, and between $141 and $190 per hour for staff counsel.[4] Though Defendants have not challenged the reasonableness of the hourly rates, I find that the billing rates are higher than the reasonable rates charged by comparable attorneys in Connecticut. While it appears that Sheppard Mullin is Plaintiff's national counsel and Locke Lord is local counsel, Plaintiff has not put forth an explanation to justify the need for two firms billing at high rates in this straightforward

---

[3] Sheppard Mullin's associates billed at $610, $450, $367.50, $355.00, and $227.50 per hour, respectively.
[4] Locke Lord's partners billed at either $455.00 or $452.00 per hour; associates billed at $301.00, $281.00, or $210.00 per hour; "staff counsel" billed at either $190.00 or $141.00 per hour.

foreclosure case. As a result, I will exercise my discretion to treat the hours billed by national counsel, Sheppard Mullin, as if they were billed at the average rate billed by local counsel, Locke Lord, $290.00.

BOA states that it is entitled to recover $22,777.21 in Sheppard Mullin's attorney's fees, but this includes fees for work not yet billed as of April 18, 2017, and as to which no work-in-progress reports or other similar documents showing the hours worked were submitted. (ECF No. 42-3 at 3.) Sheppard Mullin's invoices reflect $12,394.91 in fees billed for 36.3 hours of work performed for this matter and $17.61 in expenses. (ECF No. 42-3.) I find that Sheppard Mullin's invoices reflect a reasonable number of hours spent prosecuting this matter, but that BOA has not proven with reasonable certainty that it is entitled to recover fees for work not yet billed, and for bills not submitted to the Court. Therefore, using an average rate of $290.00, I find that BOA has proven with reasonable certainty that it is entitled to recover $10,544.61 in Sheppard Mullin's fees and expenses.

BOA states that it is entitled to recover $15,359.24 in Locke Lord's attorney's fees, an amount reflected in Locke Lord's invoices submitted to the Court, which reflect 64.6 hours of work and $2,020.14 in expenses. (ECF No. 42-4.) I find that Locke Lord's invoices reflect a reasonable number of hours spent prosecuting this matter. Therefore, BOA has proven with reasonable certainty that it is entitled to recover $15,359.24 in Locke Lord's attorney's fees and expenses.

The Court finds that the total amount of damages is **$1,645,454.03**.

IV. Conclusion

For the reasons discussed herein, BOA's Motion for Judgment of Strict Foreclosure (ECF No. 42) is DENIED. Country's Motion for Judgment of Foreclosure by Sale (ECF No. 47) is GRANTED.

        IT IS SO ORDERED.

                                                      /s/
                                        Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
               January 30, 2018